UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIOULY E. PONGNON,<br><br>                Plaintiff,<br><br>v.<br><br>NEW YORK CITY, OFFICE OF SPECIAL ENFORCEMENT, ITS AGENTS AND LAWYERS, THE NEW YORK CITY COUNCIL,<br><br>                Defendants. | Civil Action No.:  1:**25 CV 9474 (GHW)**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I.    PRELIMINARY STATEMENT

1.      Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate fundamental constitutional guarantees of due process that were denied in administrative enforcement proceedings before the New York City Office of Administrative Trials and Hearings ("OATH"). Those proceedings resulted in the imposition of $55,000 in civil penalties arising from three summonses issued by the New York City Office of Special Enforcement ("OSE") concerning rental units in a multiple dwelling owned by Plaintiff.

2.      At the OATH hearing and on administrative appeal, Plaintiff objected that the proceedings were constitutionally defective. The summonses were not supported by sworn affidavits but instead by unsworn affirmations of OSE agents; evidence was introduced that allegedly derived from a warrantless search of Plaintiff's private residence; hearsay was admitted over objection; attorneys for the City were permitted to present factual assertions as evidence; and photographs were received without proper foundation. Notwithstanding these objections, OSE obtained rulings affirming the penalties in full.

1

3.      In addition, this civil rights action challenges the constitutionality of New York City Local Law 18 of 2021 ("Local Law 18"), which imposes an unconstitutional onerous and opaque "registration" regime governing short-term rentals in New York City.

4.      Before September 5, 2023, the effective date of Local Law 18, Plaintiff engaged in short-term rentals consistent with § 121 of the New York Multiple Dwelling Law, which expressly permits short-term occupancy when the permanent occupant is present. Plaintiff entered binding rental agreements in reliance on that statutory framework. When Local Law 18 took effect, the City required prior registration and approval from the Office of Special Enforcement. Plaintiff applied and was denied. As a result, Plaintiff was forced to cancel confirmed reservations and suffered losses exceeding $15,000.

5.      This action also challenges the constitutionality of New York City's enforcement of Local Law 18 of 2022, a municipal regulatory scheme that conditions the lawful use of private homes on the surrender of fundamental constitutional protections. Through Local Law 18 and its implementation by the Office of Special Enforcement ("OSE"), the City has imposed a system of coercive registration, warrantless inspections of private residences, and summary administrative penalties that deprive property owners of their rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff, a New York City homeowner and short-term rental host, who applied for but was denied a short-term rental registration by OSE, brings this action under 42 U.S.C. §1983 to prevent the City from enforcing provisions that compel property owners to forfeit constitutional protections as the price of engaging in lawful use of their homes.  That price, like the rents in New York City, is too high.

6.      Under Local Law 18, property owners who decline to consent to warrantless searches of their homes face the immediate denial or revocation of registration required to host short-term

rentals. The statute provides no meaningful opportunity for pre-compliance judicial review, thereby forcing homeowners to choose between surrendering their Fourth Amendment rights or forfeiting their ability to use their property to generate lawful rental income. This coercive framework, implemented through opaque administrative procedures and investigator determinations, inflicts immediate economic harm while denying property owners the basic procedural safeguards guaranteed by the Due Process Clause.

7.      The enforcement regime also imposes unlawful obligations on online platforms by compelling them to police third-party listings and refuse bookings absent registration with OSE, in direct conflict with the immunity protections afforded by §230 of the Communications Decency Act, 47 U.S.C. §230. In doing so, the City has attempted to shift regulatory enforcement onto private intermediaries in a manner preempted by federal law.

8.      These constitutional injuries are not theoretical. They arise directly from the City's official policy embodied in Local Law 18 and implemented by OSE through administrative proceedings that authorize entry into private homes without judicial warrant, impose severe financial penalties, and extinguish lawful property uses without meaningful due process. For property owners like Plaintiff, who relies on short-term rentals as a lawful and essential source of income,  the local law operates as a coercive regulatory regime that places the sanctity of the home and the security of property rights at the mercy of discretionary municipal enforcement.

9.      Among those most directly affected is a Black woman homeowner in Harlem whose four-unit brownstone, lawfully owned and maintained, has become the subject of aggressive enforcement actions under this scheme. Rather than providing neutral regulation, the City's enforcement has functioned as a blunt administrative instrument that burdens her property rights and subjects her home to unconstitutional governmental intrusion.

3

10.     Through this action, Plaintiffs seek declaratory and injunctive relief to halt enforcement of these unconstitutional provisions, to vindicate the fundamental protections guaranteed by the Fourth and Fourteenth Amendments and the New York Constitution, and to ensure that municipal regulation of housing does not come at the cost of the constitutional liberties that protect every homeowner.

11.     In operation, Local Law 18 functions as a near-total prohibition rather than a regulatory measure. Upon information and belief, more than 80% of applications have been rejected. The overwhelming majority of affected properties are owner-occupied homes not removed from the long-term housing market. The law has not produced any measurable increase in affordable housing supply. Instead, it converts conduct expressly permitted under New York State law into activity allowed only at the City's opaque and arbitrary discretion.

12.     In reverse alchemy, the Local Law 18 turned a right into a privilege.

13.     As applied to Plaintiff, Local Law 18 affects an uncompensated regulatory taking, substantially impairs preexisting contracts, and deprives Plaintiff of property without due process of law. The registration regime bears no rational relationship to its stated objective and is arbitrary in operation. The law is preempted by New York State's comprehensive statutory regulation short-term occupancy duration in multiple dwellings.

14.     Plaintiff seeks declaratory and injunctive relief, just compensation, damages, and attorneys' fees.

15.     Under the guise of addressing a housing crisis and enforcing the New York State Multiple Dwelling Law ("MDL"), the New York City's housing, building and zoning codes, the Local Law 18, nominally a registration system for STRS, as applied by OSE, has devolved into a *de facto* ban on short-term rentals that preemptively prevents small homeowners, like Plaintiff,

from offering a portion of her rental unit used as a primary residence for hosted short-term stays for less than thirty days.     Local Law 18's registration process is illusory arbitrarily enforced, where OSE routinely fails to process applications, silently denies most, and provides no notice, standards, or appeals process, rendering compliance practically impossible.

16.     Local Law 18 thus violates the Due Process, Equal Protection, Contracts, Supremacy, and Excessive Fines Clauses of the United States Constitution and the parallel guarantees of the New York State Constitution, Article I, §§ 5, 6, and 11.

17.     Plaintiff seeks declaratory, injunctive, and monetary damages relief to prevent further enforcement of this unconstitutional and confiscatory law.

## II.    INTRODUCTION

18.     Plaintiff, *pro se*, alleges upon knowledge as to her own acts and upon information and belief as to all other matters, as follows.

### JURISDICTION

19.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

20.     This case presents federal questions under the Fourth and Fourteenth Amendements to the Constitution of the United States.

21.     This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

22.     Declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983.

### PARTIES

23.     Plaintiff, Miouly E. Pongnon, is an  African-American individual residing in the City and State of New York.

24.	Plaintiff owns and resides in a four-unit multiple dwelling located  at 2005 5th Avenue, New York, NY 10035-1804.

25.	Plaintiff's property is subject to regulation pursuant to the New York State Multiple Dwelling Law, which, among other things, regulates short-term rentals.

26.	Plaintiff's property is subject to regulation pursuant to the New City Local Law 18, which regulates short-term rentals.

27.	Defendant, The City of New York, is a municipal corporation organized under the laws of the State of New York and responsible for enacting and enforcing the challenged laws. The City operates at the following address:  New York City, Office of the Comptroller, 1 Centre Street, Room 1225, New York, NY 10007

28.	Defendant, The New York City Council, is the legislative body responsible for enacting Local Law 18.  The City designates at the following address:  New York City, Office of the Comptroller, 1 Centre Street, Room 1225, New York, NY 10007, as the address where it receives service of process.

29.	Defendant, The Office of Special Enforcement ("OSE"), is the agency charged with administering and enforcing Local Law 18 and "special" enforcement of the relevant underlying provisions of MDL and housing, fire and zoning codes.  OSE operates at the following address: 22 Reade Street, 4th Floor, New York 10007.

<strong><u>VENUE</u></strong>

30.	Venue lies in the Southern District of New York under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the Southern District of New York, and all defendants reside or operate within this district.

## II.    FACTUAL ALLEGATIONS

31.    Since September 2003 through the present date, Plaintiff has resided in one of the units in her building as her primary residence.

32.    Pursuant to the New York State Multiple Dwelling Law, the four rental units in Plaintiff's building are classified as "Class A," which are restricted to residential use by permanent residents rather than short-term tenants. Plaintiff lawfully engaged in short-term rentals in compliance with the "MDL", including MDL § 121, which permits short-term occupancy in Class A dwellings where the permanent occupant is present.

33.    Plaintiff entered into binding short-term rental contracts prior to September 5, 2023, the enforcement date of Local Law 18.

34.    On September 5, 2023, New York City began enforcing Local Law 18 through the Office of Special Enforcement ("OSE"), requiring prior municipal registration and approval.

35.    Plaintiff applied for and was denied registration.

36.    Plaintiff was forced to cancel confirmed reservations she had received prior to September 5, 2023, losing more than $15,000 in revenue.

37.    Ms. Pongnon has no commercial properties and does not operate as a business enterprise.

38.    Her short-term rentals have historically helped her meet mortgage, tax, insurance and maintenance obligations, preserving, rather than removing, affordable housing stock.

39.    In addition, revenue derived from her short-term rentals have enabled Plaintiff to offer one or more of her three units below market rental rates for the Harlem area.

40.    From January 2021 through August 2024, Ms. Pongnon rented the one of her units well below market rate to a low-income tenant who paid her rent using a NYCHA Section 8

7

voucher.

41.     Upon information and belief, OSE has rejected more than 80% of registration applications for short-term rental.

42.     Upon information and belief, the overwhelming majority of affected units are owner-occupied dwellings;

43.     Upon information and belief, no discernable increase in affordable housing supply in New York City has resulted since the enforcement of Local Law 18

44.     Upon information and belief, women and minority homeowners are disproportionately represented among the applicants whose short-term rental registration applications were denied OSE.

45.     Local Law 18 operates as a near-categorical prohibition on owner-present short-term rentals.

## A.     CONSTITUTIONAL VIOLAITONS IN OATH PROCEEDINGS.[1]

46.     At all relevant times, OSE and its agents and inspectors acted under color of state and municipal law and within the scope of their employment by Defendant City of New York.

47.     Among other duties, OSE is charged with the "special" investigation and enforcement of the City's housing code in respect of rental units used for short-term rentals.

48.     On or about March 24, 2023, in the morning, OSE agents entered Plaintiff's dwelling in New York City without a judicial warrant and without seeking obtaining her consent to a warrantless search of her premises in her absence.

---

[1]. The Roker-Feldman Doctrine permits a federal constitutional challenge of the OATH proceeding but disallows relief seeking reversal, annulment or invalidation of the OATH Appeals Unit determination.  Consequently, Plaintiff may only seek damages for injuries resulting from constitutional violations.  *See*, e.g., Patsy v. Board of Regents, 457 U.S. 496 (1982) (no exhaustion of state administrative remedies (e.g. New York State Article 78 Proceeding) required in §1983 actions. *Northeast Cent. Sch. Dist. v. Sobol*, 108 F.3d 768 (2d Cir. 1997).

49.     Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when an official policy, custom, or practice is the moving force behind the deprivation of a constitutional right.

50.     The City's actions and omissions described herein constitute such a policy and moving force.

51.     Upon information and belief, the City's so thoroughly failed to adequately train or supervise OSE inspectors amounts to deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989), because the need for training on the constitutional limits of home inspections is so obvious that the City's failure to provide it evidences an intentional disregard for citizens' rights.

52.     The City's deliberate indifference is further demonstrated by its knowledge of a pattern of similar violations.  In multiple instances, OSE and other City enforcement officers have conducted warrantless entries into private homes under the pretext of administrative inspections.  Despite lawsuits and complaints, the City has persisted in such conduct, showing that it has made a conscious choice to allow unconstitutional searches to continue.  *See Walker v. City of New York*, 974 F.2d 293, 297–99 (2d Cir. 1992) (failure to train may constitute municipal policy where policymakers knew or should have known of the need for training and made a conscious choice not to act).

53.     The City's failure to train and supervise OSE inspectors was the direct and proximate cause of the violation of Plaintiff's Fourth Amendment rights.

54.     The unconstitutional entry into Plaintiff's home was a foreseeable consequence of the City's deliberate indifference and failure to provide meaningful guidance on warrants

requirements. *See*, *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (municipal liability arises where failure to train is closely related to constitutional injury).

55.    The deliberate indifference and policy of OSE's warrantless enforcement practices have been repeatedly recognized in litigation and public reports, yet the City has refused to modify its policies or ensure that OSE agents secure judicial warrants before entering private residences. *Cf, Aguilar v. City of New York*, No. 21-cv-10788, 2022 WL 1666918 (S.D.N.Y. May 25, 2022).

56.    A guest who was present in one of Plaintiff's rental units on the date of OSE's warrantless raid, March 24, 2023, lacked actual or apparent authority to consent to the search and had been given no permission to waive Plaintiff's Fourth Amendment rights.

57.    Previously, in or about the summer of 2022, Plaintiff had explicitly informed OSE agents who had appeared at her home that she would not consent to any inspection or search of her premises absent a judicial warrant.

58.    Notwithstanding that clear notice, City agents returned on March 24, 2023 and entered Plaintiff's residence without a warrant, her consent,  or the presence of exigent circumstances.

59.    The OSE agents' conduct was not an isolated incident but rather the product of the City's policies, customs, and practices, including:

    a.   A policy, custom, and practice of conducting warrantless inspections of private residences in connection with the City's enforcement of Local Law 18 and related short-term rental regulations, even when such inspections invade constitutionally protected dwellings;

    b.   A failure to train, supervise, and discipline OSE agents regarding the Fourth Amendment limits on administrative searches and the requirement of a judicial warrant or valid consent prior to entering private dwellings; and

    c.   A deliberate indifference to the constitutional rights of New York City residents, as evidenced by the City's knowledge of prior incidents, public complaints, and

judicial criticism concerning OSE's unconstitutional search practices, and its ongoing failure to implement corrective training or oversight.

60.     On or about March 24, 2023, Plaintiff returned to her home in the evening to find copies of three OSE summonses affixed to the exterior front door of her building located at 2005 5th Avenue, New York, NY  10034-1804.  _See_ Summons Nos. 35668813P; 35668814R; and 35668815Z.

61.     Summons No. 35668813P claimed Plaintiff violated the NYC Construction, Administrative or Electrical Codes, or other rules and regulations.  Section:  AC 28-210.3 Class: 1. Perm. Dwelling Offered used and converted to other than residential purposes, with a default penalty of $25,000 and Section 28-202.1, an additional daily penalty for class 1 violation  of $45,000.

62.     Summons No. 35668814R claimed Plaintiff violated NYC Construction, Administrative or Electrical Codes, or other rules and regulations, Section 28-301.1 by failing to maintain the required number of means of egress on every floor in Units 3 and 4 in Plaintiff's building, with a default fine of $12, 500.

63.     Summons No. 35668815Z claimed Plaintiff violated NYC Construction, Administrative or Electrical Codes, or other rules and regulations, Section AC 27MISCAC28MISCBCMI, Class Miscellaneous violations, for failure to provide a fire alarm system for transient use in Units 3 and 4 of Plaintiff's building, with a default fine of $12,500.

64.     OSE had made no previous attempt to personally serve the summonses on Plaintiff.

65.     Service of subject OSE summons was neither valid nor sufficient to confer personal jurisdiction over Plaintiff because OSE made no effort to serve the summonses personally upon Plaintiff at her known place of business, as evidenced by the HPD Registration of the subject

premises, before to resorting to service by conspicuous posting followed by mailing prescribed in CPLR §308(3).

66.    The OSE attached affirmations of services attached to the three summonses.   Such affirmations were insufficient to confer jurisdiction over Plaintiff and comply with constitutional due process thresholds because they were in contravention of CPLR §§308(4), 306, and 2106 and §1-107(d) of The Rules of Practice Applicable to Cases at the OATH Trials Division ("OATH Practice Rules"), which at the time required that OSE file of an _affidavit_ as proof of service of its summonses.

67.    Upon information and belief, on or about March 25, 2023, OSE caused the New York City Department of Sanitation to issue a summons to Plaintiff, alleging, without cause, that there was a "large accumulation" of cups, paper and napkins on the sidewalk outside her premises. _See_ Summons No. 04755136K.

68.    After a hearing on June 23, 2025, the OATH dismissed Summons No. 04755136K. _See_, OATH Decision, dated June 23, 2023.  The OATH held that Plaintiff regularly 'employed reasonable efforts to maintain the sidewalk' outside her premises.

69.    On or about  November 6, 2023, at the remote hearing before the Office of Administrative Trials and Hearings ("OATH"), the hearing officer permitted OSE, over the objections of Plaintiff, to submit evidence that was the result of the warrantless entry and search Respondent's home in contravention of her constitutional rights pursuant to the 4th Amendment of United States Constitution and of the New York State Constitution, both of which presumptively prohibit warrantless entry and searches into dwellings.

70.    In addition, over Plaintiff's objections, the OATH hearing officer permitted OSE to sustain its allegations that Plaintiff had violated Local Law 18 upon hearsay testimony submitted

by its Attorney, without any direct evidence from any eyewitnesses, all notwithstanding Plaintiff's stated objections.

71.    Instead, OSE's attorney was allowed to testify as to the photographs of Plaintiff's premises, among other things.

72.    The OSE agent who appeared at the hearing to provided hearsay testimony, over Plaintiff's stated objections, from an unnamed woman he claimed was a guest in Unit 4 in Plaintiff's building.

73.    Despite discovery requests for the names of witnesses and production of documents OSE intended to use to substantiate the violations in the summonses issued to Plaintiff, OSE never responded.

74.    Similarly, over the Plaintiff's stated objections, the OATH permitted OSE's attorney to submit photographs purportedly of Plaintiff's premises, without laying any foundation for the admission of such photographs.

75.    As a result the foregoing hearing plagued by due process violations, OATH sustained all three of the  summonses issued by OSE on March 24, 2023.  See Decision dated November 6, 2023.

76.    The OATH sustained the penalties for the violations indicated in the summonses, totaling $55,000.

77.    On or about January 15, 2024, Plaintiff appealed the decision of OATH to the OATH Appeals Unit, arguing that the three summonses should have been dismissed owing to procedural due process violations noted above and violation of her 4th Amendment right to be free of warrantless entry into her property.

78.    By decision dated March 24, 2024, the OATH Appeals Unit affirmed the decision of the OATH in its entirety, upholding the total fines of $55,000 OSE had imposed against Plaintiff.

79.    Upon information and belief, on or about October 3, 2024, OSE caused the New York City Department of Health to issue to notice of violation to Plaintiff, claiming that rat signs exist at a hole in the concrete at the left side of the base of the front steps to Plaintiff's building.

80.    Although Plaintiff had never observed signs of rat activity at her premises, on or about September 15, 2024 she had the small (less than inch) crack in the concrete at the base of the exterior newel post filled with concrete.

81.    Notwithstanding the repair Plaintiff made to the concrete near her exterior steps, upon re-inspection of the premises on or about September 15, 2024 the Department of Health Agent issued Summons No. 0803215005 on October 3, 2024, claiming Plaintiff had violated AH3N NC HC 151.02(a) for "active rat signs' with "one active rat hole with sebum marks" on concrete at base of step at the front left of Plaintiff's premises.    The summons carried a minimum fine of $300.

82.    After a hearing held on or about January 23, 2024, at which Plaintiff submitted photographic evidence that she had filled in the small concrete hole at the base of her steps as of September 15, 2024, Summons No. 0803215005 was dismissed.  *See* OATH Decision dated January 23, 2025.

83.    On or about October 23, 2025, the City of New York caused Plaintiff to be personally served a verified complaint seeking a judgment to enforce the OATH Appeal Unit decision sustaining its right to collection of the fines imposed upon her for violations of Local Law 18. *The City of New York v. Miouly E. Pongnon*, Index No. 452951/2025, Supreme Court New York County.

14

**B.**    **Summary of the Provisions of Local Law 18**

84.    This civil action challenges the constitutionality of New York City Local Law 18 of 2021 (Local Law 18), which imposes broad and punitive restrictions on short-term residential rentals.

85.    Local Law 18, codified at Administrative Code §§ 26-3101 et seq., requires any person offering short-term rentals (defined as less than 30 days) to register with OSE and prohibits such rentals except under narrow circumstances.

86.    Local Law18 prohibits the rental of an entire dwelling unit for fewer than 30 days and limits even shared accommodations to no more than two paying guests while the host is physically present.

87.    Violations of Local Law18 subject homeowners and booking platforms to substantial and sometimes prohibitive  civil penalties.

88.    New York City Local Law 18, codified primarily in N.Y.C. Admin. Code §§ 26-3101 et seq. and often referred to as the "Short-Term Rental Registration Law," was enacted to regulate short-term rentals in an effort to alleviate the city's affordable housing crisis. However, evidence suggests that the law was adopted without sufficient data or studies establishing a causal relationship between short-term rentals and the shortage of affordable housing.

89.    Local Law 18 was enacted under the pretext of regulating short-term rentals in New York City to address purported concerns about housing affordability and safety. In practice, however, Local Law18 has operated as a de facto ban on short-term rentals, particularly for small property owners and homeowners like Ms. Pongnon, who hosted and seeks to continue to host responsible, lawful guests in their own homes.

15

1.  **Local Law Requires that Short-Term Rental Hosts Submit to Warrantless and Unreasonable Administrative Searches**

90.    Local Law 18 Authorizes OSE to inspect private residences used for short-term rentals.

91.    A host's refusal to consent to a search or inspection by OSE results in denial or revocation of registration, effectively a host from engaging in short-term rentals.

92.    Local Law 18 contains no provisions for pre-compliance judicial review of OSE's denial or revocation of a short-term rental registration.

## 2. The Illusory "Registration" Requirement

93.    While LL18 purports to establish a "registration" framework administered by the OSE, the system is illusory and functionally prohibitive.

- The law ostensibly allows an owner or tenant to apply for a registration number to host short-term stays of fewer than 30 days.

- Yet, upon information and belief, OSE has approved less than 15% of all applications, effectively converting a registration scheme into a blanket prohibition.

- The process requires excessive documentation—proof of primary residence, floor plans, notarized owner consent, and compliance certifications far beyond those demanded by any other class of residential use.

- Even where an applicant satisfies every requirement, OSE retains unfettered discretion to deny or revoke registration, often without notice or meaningful opportunity to be heard, in violation of due process.

94.    The supposed "path to compliance" is thus illusory, designed not to regulate, but to completely extinguish lawful short-term hosting. Local Law 18, under the guise of a licensing program, functions as a de facto ban on short-term rentals, disproportionately affecting minority

16

applicants and stifling economic opportunities. Its excessive rejection rates, and discriminatory impact, render it unconstitutional and inconsistent with its stated legislative intent.

95.     The excessive denial rate effectively excludes the majority of potential hosts from participating in the short-term rental market, undermining the purported regulatory purpose. This disproportionate impact demonstrates that Local Law 18 fails to provide a meaningful opportunity for compliance, effectively prohibiting lawful operation.

### 3. Arbitrary and Disparate Enforcement of Existing Codes

96.     Local Law 18 imposes differential and extra-stringent enforcement of existing housing, fire, and building code provisions on those engaged in short-term hosting.

- Units identical in size, structure, and safety features are held to dramatically higher standards solely because they are offered for short-term rental with the owner present.

- Minor or technical deviations, such as a self-closing door or a double lock, are weaponized as violations, whereas the same features are tolerated without penalty in long-term rental or owner-occupied dwellings.

- OSE inspectors are granted expansive authority to enter private homes without a warrant or consent, under the guise of "inspection," creating grave privacy and Fourth Amendment concerns.

97.     This selective enforcement lacks any rational connection to safety or habitability and instead functions as an instrument of economic discrimination.

### 4. Disparate Impact on Black and Latino Hosts

98.     Upon information and belief, statistical and anecdotal evidence reveal that Black and Latino New Yorkers, including Plaintiff, are disproportionately represented among small-scale hosts seeking to supplement income or maintain ownership of their homes.

17

- The law's prohibitive costs, opaque procedures, and excessive penalties disproportionately burden these communities, amplifying historic inequities in property ownership and economic opportunity.

- Larger corporate landlords—often owning entire buildings—remain largely unaffected, while the City targets individual homeowners in working- and middle-class neighborhoods for punitive enforcement.

99.     This disparate impact renders Local Law 18 both irrational and discriminatory in its application.[2]

### 5.    Host Privacy and Security Risks

100.    Among LL18's most invasive provisions are requirements that hosts:

- Provide access to all interior spaces for City inspectors or investigators;

- Disclose lock configurations, entry codes, and bedroom access details to the OSE and to the public-facing registration database.

101.    These provisions compromise host and guest safety and privacy, violating reasonable expectations of privacy in one's home and exposing hosts—disproportionately women and minorities—to serious security risks.

### 6.    Onerous and Disproportionate Fines

102.    The penalties under Local Law 18 are extraordinarily punitive and without analog in the City's broader regulatory regime.

103.    The fines imposed under Local Law 18 are disproportionately high compared to penalties for similar violations by non-short-term rental hosts. This disproportion creates an

---

[2]. Eric Holder, Opinion: Black and Brown New Yorkers deserve an immediate solution to the homeowner crisis, City & State New York, December 8, 2025. https://www.cityandstateny.com/opinion/2025/12/opinion-black-and-brown-new-yorkers-deserve-immediate-solution-homeowner-crisis/409989/

arbitrary enforcement mechanism that lacks a rational basis, thereby violating the Due Process Clause.

104.    The New York City Administrative Code § 27-2115 establishes a framework for penalties related to housing violations. Local Law 18's fines are inconsistent with these established penalties, indicating an arbitrary deviation from the City's standard penalty framework.

105.

**C.    Local Law 18 Lacks A Rational Basis**

106.    The City justified LL18 on the theory that restricting short-term rentals would increase long-term housing availability. However, every independent study conducted since its implementation, along with the City Council's own introduction of corrective Bill 1107 (2024), demonstrates that LL18 has not produced any measurable increase in affordable housing stock.

107.    Local Law 18's provisions are irrational, arbitrary, and punitive in both design and effect. Under the guise of consumer protection and housing stability, the City has created an opaque, unworkable, and discriminatory regime that criminalizes ordinary conduct, strips homeowners of privacy, and imposes exorbitant fines without due process.

108.    Additionally, over twenty-four months of enforcement has failed to demonstrate any statistically significant increase in affordable housing units, even as short-term rental listings have dropped by more than 80%.

109.    Upon information and belief, when passing Local Law 18, the New York City Council relied on no known studies or data were to justify its adoption, and its enforcement has not resulted in measurable improvements to affordable housing availability. The law's failure to

achieve its stated objectives, coupled with its disproportionate impact on small-scale hosts, raises serious questions about its validity under rational basis review.

110.    Similarly, lawmakers did not explore evidence-based alternatives to address the affordable housing crisis in New York City more effectively.

111.    The New York City Council provided little to no empirical evidence to establish a direct causal link between the proliferation of short-term rentals and the city's affordable housing crisis. Unlike other jurisdictions that conducted impact assessments before regulating short-term rentals, New York City failed to commission or rely on studies demonstrating that:

- Short-term rentals are a primary or substantial cause of reduced housing availability.

- Restricting short-term rentals would lead to a measurable increase in affordable housing stock.

112.    New York City appears to have relied on rank anecdotal evidence and generalizations.

113.    Local Law 18 was justified on the premise that short-term rentals remove housing units from the long-term rental market. However, a 2018 study by McGill University found that commercial operators, rather than casual hosts, worsened housing affordability.  The study also concluded that the primary drivers of the affordable housing crisis were factors such as stagnant wages, rising construction costs, and inadequate affordable housing.[3]

114.    Local Law 18's lack of supporting data and failure to achieve its stated goals suggest it is arbitrary and capricious under New York law.

### 1.  OSE Enforcement Resulted in Significant Reduction in Short-Term Rentals But No Discernible Increase in Affordable Housing Units.

115.    Since OSE began the enforcement of Local Law 18 in September 2023, short-term rental listings in New York City have declined by over 80%.

---

[3] . McGill Univ. School of Urban Planning, *The High Cost of Short-Term Rentals in New York City* (2018).

116.    Despite the astounding reduction in short-term rentals, there has been no statistically significant increase in affordable housing stock. This disconnect confirms that the reduction in short-term rentals has <u>not</u> translated into tangible benefits for the affordable housing market, calling into question the rational basis for Local Law 18.

### 2.    Missed Opportunities for Less Restrictive Alternative Solutions

117.    New York City could have adopted less restrictive measures, such as:

- Limiting short-term rentals to primary residences.

- Imposing occupancy limits and zoning restrictions.

- Requiring financial contributions from short-term rental platforms to fund affordable housing initiatives.

118.    These measures have been successfully implemented in other jurisdictions without the sweeping restrictions of Local Law 18.

### D.    Local Law 18 is Ultra Vires Because it is Inconsistent with New York State Short-Term Rental Regulatory Framework.

119.    Plaintiff brings this action for declaratory and injunctive relief, asserting that the New York City Council acted *ultra vires*, beyond the scope of its lawful authority when it enacted Local Law 18. Within the State of New York, the legislative power to regulate housing, rental markets, and landlord–tenant relations is reserved to the State Legislature, which has enacted comprehensive housing statutes occupying the field.

120.    In New York, the regulation of housing and rental markets has long been a matter of statewide concern.

121.    The State Legislature expressly delegated certain administrative enforcement powers to municipalities, including New York City, but retained exclusive legislative authority to determine the substantive contours of rent regulation and housing policy.

21

The City of New York's authority to legislate in the housing field derives solely from state delegation under the Municipal Home Rule Law ("MHRL") and the City Charter.

123.    Local Law 18 is inconsistent with the state legislative scheme by imposing new regulatory burdens that contradict the State's housing policy objectives, effectively creating a parallel and conflicting system.

122.    Local Law 18 requires short-term rental hosts to register with the OSE, prohibits booking platforms from processing unregistered listings, and imposes fines of up to $7,500 per transaction, effectively banning short-term rentals in most circumstances that were previously lawful under the MDL without a prior registration or arbitrary review by OSE.

123.    The Law was not enacted pursuant to any state delegation of authority to regulate or prohibit short-term rentals. Rather, it was adopted by the City Council acting under its general police power, without legislative authorization from the State.

124.    By restricting the use and rental of privately owned dwellings, Local Law 18 materially alters the rights and obligations of landlords and tenants and directly conflicts with the State's comprehensive housing statutes, including, Multiple Dwelling Law §§ 4, 301, 302, which regulate occupancy, use, and safety of residential premises.

125.    The State Legislature has not delegated to the New York City Council any power to restrict or prohibit lawful short-term residential rentals or to regulate the relationship between property owners and short-term occupants.

126.    In contrast, where the State has intended to authorize municipal regulation of a particular housing issue, it has done so explicitly.  E.g.,  Delegation of authority under the ETPA to localities to "declare an emergency" and thereby activate rent stabilization provisions.

22

127.     No comparable statutory authorization exists for the City to regulate short-term rentals.

128.     Local Law 18 is therefore preempted by state law and represents an unauthorized exercise of legislative power by the City Council. It conflicts with, frustrates, and undermines the state's uniform regulatory scheme governing residential rental housing.

129.     Accordingly, Plaintiff seeks a declaration that Local Law 18 is ultra vires, preempted, unconstitutional, and unenforceable, and seeks an injunction prohibiting its enforcement against Plaintiff and similarly situated property owners and hosts.

**E.     Local Law Violates the Protections Provided Under the U.S. Constitution**

130.     By imposing categorical prohibitions and sweeping penalties that are inconsistent with these interrelated housing laws, Local 18 violates the Supremacy Clause, Contracts Clause, and the Due Process and Equal Protection Clauses of the United States Constitution.

131.     Local Law 18 requires every host offering short-term rentals (fewer than 30 days) to register with the OSE and comply with extensive administrative requirements, including submission of floor plans, notarized attestations, and proof that the owner resides on the premises.

132.     The law further prohibits entire-unit rentals and limits the number of guests to two, regardless of property size.

133.     Local Law 18  requires all short-term rental hosts in New York City to register with the OSE. The law mandates compliance with stringent operational requirements, including adherence to zoning laws, building code regulations, and prohibitions on unhosted rentals. Hosts must submit detailed documentation, including proof of residence and notarized agreements from landlords, in addition to paying registration fees.

23

134.     Data obtained from OSE reveals that over 80% of applicants for registration under Local Law 18 have been denied.

135.     Upon information and belief, this rejection rate is even higher among racial minority applicants, suggesting systemic barriers rooted in structural inequities and disproportionately punitive enforcement mechanisms. These outcomes starkly contrast with the purported goal of regulating, rather than banning, short-term rentals.

136.     The rejection rate of over 80% of applicants, coupled with procedural and substantive obstacles embedded in Local Law 18, underscores its practical effect as a prohibition rather than a regulatory measure.

137.     The excessive denial rate effectively excludes the majority of potential hosts from participating in the short-term rental market, undermining the purported regulatory purpose. This disproportionate impact demonstrates that Local Law 18 fails to provide a meaningful opportunity for compliance, effectively prohibiting lawful operation.

**1. Discriminatory Impact on Racial Minorities Violates Equal Protection Principles**

138.     Upon information and belief, data within the City's possession shows that minority applicants face disproportionately higher rejection rates under Local Law 18, raising significant Equal Protection concerns under the Fourteenth Amendment. In *Washington v. Davis*, 426 U.S. 229 (1976), the Court held that a facially neutral law with a discriminatory impact can violate the Equal Protection Clause if it lacks a legitimate justification.

139.     Here, the disparate impact on minority hosts like Plaintiff is tied to structural inequities, such as housing patterns and historical discrimination. For example, minority residents are more likely to live in multi-family buildings, which are disproportionately subject

to restrictive zoning and building codes that disqualify applicants under Local Law 18. This results in systemic exclusion, violating constitutional guarantees of equal protection.

### 2. Discriminatory Enforcement Magnifies Inequities

140.    Upon information and belief, in addition to structural barriers, enforcement of Local Law 18 disproportionately targets neighborhoods with higher minority populations. This mirrors the discriminatory enforcement patterns seen in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), where a facially neutral law was deemed unconstitutional due to its unequal application. The selective enforcement of Local Law 18 exacerbates racial disparities, rendering it unconstitutional.

### F.    City Council Concedes Local Law 18 Is Overly Broad

141.    Local Law 18 is impermissibly overbroad, sweeping within its reach all short-term rental activity, regardless of scale, context, or demonstrated harm.

142.    In enacting LL18, the New York City Council failed to consider or adopt less restrictive, narrowly tailored alternatives that would have achieved the City's stated objectives of ensuring safety and preserving housing stock without effectively criminalizing small-scale home sharing. Such alternatives—including mandatory safety self-certifications, simplified registration for owner-occupied premises, occupancy limits, or targeted enforcement against absentee commercial operators—were readily available and have been successfully implemented in comparable jurisdictions such as Boston, San Francisco, and Washington, D.C. Instead, the City adopted an across-the-board prohibition, disabling thousands of responsible homeowners from engaging in otherwise lawful, regulated activity.

143.    This legislative over breadth is constitutionally significant, as it demonstrates that LL18 is not rationally related to its stated purpose and burdens substantially more conduct than necessary to achieve any legitimate governmental interest.

25

144.     Local Law 18 also suffers from its arbitrary, one-size-fits-all approach, which fails to distinguish between vastly different categories of short-term rental activity. The law treats small, owner-occupied dwellings—such as Ms. Pongnon's unit within her multiple dwelling—identically to large commercial operators managing dozens or even hundreds of transient units across the City.

145.     This failure to draw rational distinctions renders the law arbitrary, unsupported by evidence, and inconsistent with principles of equal protection and rational-basis review under both state and federal constitutional standards.

146.     In successive  strokes of legislative irony, the City Council appears to be retreating from some of the more onerous conditions on STRs indicated in Local Law 18.

147.     First, on June 24, 2025, the City Council introduced Bill 948-A, which would amend Local Law 18 in respect of one and two unit buildings by:  increasing the number of allowable boarders, roomers, and lodgers from two to four not including any children under the age of 18; (allowing the owner-occupant to host guests without being physically present; and eliminating the requirement that doors between lodgers and owner's spaces be unlocked.

148.     Second, on or about November 13, 2024, the City Council introduced Bill No. 1107 (2024), which would allow owners of one and two unit buildings to rent out rooms while they are away, increase the maximum occupancy to four guests, and permit internal locks for privacy.

149.     While the introduction of Bills No. 948-A and 1107 itself is a tacit admission that Local Law 18 is unworkably overbroad and irrational, the proposed amendment only underscores the law's arbitrariness.

150.     Notably, the justification provided for Bill No. 1107 explicitly mirrors the arguments long advanced by the opponents of Local Law 18, that the law is overbroad, punitive, and not

26

rationally related to its stated purposes of improving housing affordability or neighborhood quality of life.

### 1. Less Restrictive Alternatives Exist to Achieve the City's Goals

151. The onerous requirements of Local Law 18 are neither narrowly tailored nor the least restrictive means of achieving the City's goals of addressing housing affordability and ensuring safety. Less burdensome alternatives, such as simplified registration processes, tiered compliance requirements, or increased landlord incentives, would achieve similar regulatory objectives without effectively banning short-term rentals. _See_, _Central Hudson Gas & Electric Corp. v. Public Service Commission_, 447 U.S. 557 (1980), the Court emphasized the importance of tailoring regulatory measures to minimize unnecessary burdens. Local Law 18 fails this test.

152. Upon information and belief, effective 2018, OSE was tasked with enforcing provisions of the MDL and the housing code, and zoning codes bearing on short-term rentals.

153. At all relevant times, the following laws formed part of the regulatory framework applicable to STRs in New York City.

154. Under New York State Multiple Dwelling Law § 121 (and related provisions of the New York City Housing Maintenance Code), renting out entire residential apartments for fewer than 30 days in a building with three or more dwelling units is generally illegal unless the permanent occupant remained in residence, i.e., no "un-hosted" stays in STRs**.**

155. Under Local Law 146 of 2018, known as the "*Home-sharing Surveillance Ordinance*," requires booking platforms like AirBnB to report data about STR transactions to OSE on a periodic basis. It is designed to give enforcement agencies information about illegal home sharing but does not require host registration or impose a verification system.

27

156. Under Local Law 64 of 2020, with a stated purpose of ensuring compliance with housing, fire, and safety codes, specifically protecting rent-regulated housing stock, requires STR booking services to disclose to OSE the physical address of the listing, the URL of the advertisement, information on the host (including name and contact), and details of the all rental transaction of an entire home or those allowing three or more guests.

**H. Plaintiff Applied for STR Registration**

157. On or about September 15, 2023, Plaintiff submitted an application to register her primary residence as an authorized short-term rental host. Despite complying with all listed requirements and submitting full documentation, OSE failed to approve or deny her application.

158. Plaintiff paid a total of $145 for the application to offer one of her units as a short-term rental.

159. Plaintiff supplied all the required supporting documentation to her application for a STR Registration with OSE.

160. After repeated follow-ups by Plaintiff, OSE neither responded nor issued a determination. By operation of its online system, the application was effectively deemed "expired," rendering Plaintiff ineligible to rent her property for short-term stays and subject to fines if she attempted to do so.

161. Indeed, upon information and belief, the City's own data showing that over 80% of STR registration applications have been either denied or never answered.

162. As a direct and proximate result of OSE's tacit denial of her Short Term Registration application, Plaintiff suffered loss the existing reservations for short term stays in a minimum amount of exceeding $15,0000.

**I.      Federal Preemption:  Communications Decency Act (47 U.S.C. §230)**

163.     Congress enacted 47 U.S.C. §230 to ensure that online platforms are not treated as the publisher or speaker of information provided by third-party users and to prevent state and local governments from imposing liability based on such content.

164.     Section 230 expressly preempts any state or local law that imposes liability inconsistent with that protection.

165.     Online short-term rental platforms host and display listings created entirely by users, property owners and tenants, who generate the content describing their properties, availability, and pricing.

166.     Under Local Law 18, however, the City and OSE require such platforms to verify that each listing contains a valid City registration number and to prevent the display or booking of listings that the City determines are non-compliant.

167.     In order to comply with the law, platforms must review, evaluate, and monitor third-party listings to determine whether the content reflects a legally registered host and whether the listing may lawfully appear on the platform.

168.     Platforms that fail to perform this monitoring function face civil penalties and enforcement actions from the City.

169.     By compelling platforms to examine and police user-generated listings and by imposing penalties if they publish or facilitate bookings associated with allegedly unlawful listings, Local Law 18 treats platforms as the publisher or speaker of third-party content.

170.     Such obligations are precisely the type of monitoring and editorial responsibility that §230 was enacted to prohibit.

171.    The statute therefore imposes liability on interactive computer services based on their publication of information provided by third-party users.

172.    Because §230 precludes state or municipal regulation that treats online platforms as publishers of third-party content, the provisions of Local Law 18 that impose such obligations are preempted by federal law.

173.    Accordingly, those provisions are invalid under the Supremacy Clause of the United States Constitution.

### III.    CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of the Due Process Clause (U.S. Const. amend. XIV and 42 U.S.C. §1983)**

174.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

175.    The Fourteenth Amendment's Due Process Clause provides that no state may deprive any person of life, liberty, or property, without due process of law. OSE violated Plaintiff's rights to procedural due process of law by:

(a) By entering Plaintiff's property without a warrant, the agents of OSE violated her 4th Amendment right to be free of warrantless searches;

(b) By accepting OSE's fatally defective summonses, without the requisite affidavits of service; as adequate to confer personal jurisdiction over Plaintiff; and

(c) By permitting OSE, at the trial on the summonses based on alleged violations of the MDL regarding rental of Class A properties, to submit  hearsay testimony by OSE agents; testimony by OSE attorneys ; and to rely on unauthenticated photographs to substantiate the claimed violations, notwithstanding Plaintiff's stated objections.

176.    In addition, the above stated due process violations violate 42 U.S.C. § 1983.

### SECOND CLAIM
**Fourth Amendment: Warrantless Administrative Searches Under Local Law 18**

177.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

178.    Because Local Law 18 requires private property owners to submit to warrantless administrative search and inspections by OSE or other administrative agencies, as a condition for registration of short-term rentals without pre-compliance judicial review, it violates the Fourth Amendments protection from unreasonable searches.

### THIRD CLAIM
**Unconstitutional Conditions**

179.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

180.    Government may not condition a benefit on surrender of a constitutional right.

181.    Local Law 18 conditions STR registration on consent to inspection.

182.    Refusal to consent results in revocation or denial of registration.

183.    Such coercion violates the unconstitutional conditions doctrine.

### FOURTH CLAIM
**Procedural Due Process (Fourteenth Amendment – 42 U.S.C. §1983)**

184.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

185.    OSE's denial or revocation of registration for short-term rental activity denies property owners protected property interests in rental income and lawful use of property.

186.    Local Law 18 provides no meaningful pre-deprivation hearing, relying instead on investigator individual determinations.

187.    Revocation triggers immediate economic harm, as platforms cannot process bookings.

188.    Courts recognize such automatic economic deprivation without judicial review as a procedural due process violation.

### FIFTH CLAIM
**Substantive Due Process / Economic Liberty**

189.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

190.    Local Law 18 deprives hosts of the ability to earn income from lawfully owned property.

191.    Combined with coercion and lack of judicial review, Local Law 18 violates substantive due process rights.

## SIXTH CLAIM
**New York State Constitution – Search & Seizure  (Art. I §12)**

192.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

193.    Homes receive broader protection under the NY Constitution than under the federal Fourth Amendment.

194.    Local Law 18 provisions sanctioning warrantless inspection of private residences used for short-term rentals violates Article I §12.

## SEVENTH CLAIM
**Vagueness and Overbreadth**

195.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

196.    Local Law 18 is vague regarding several critical regards, including, scope of inspections by OSE, definition of short-term rental, and criteria OSE applies for denial orrevocation of STR registration.

197.    Vagueness risks arbitrary enforcement, coercion, and constitutional violations.

## EIGHTH CLAIM
**Municipal Liability Under 42 U.S.C. § 1983 (Monell Claim)**

198.    Plaintiff repeats and re-alleges paragraphs 32-174 as though fully set forth herein.

199.    Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when an official policy, custom, or practice is the moving force behind the deprivation of a constitutional right.

32

200.     The City's actions and omissions described herein constitute such a policy and moving force.

201.     The City's failure to adequately train or supervise OSE inspectors amounts to deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989), because the need for training on the constitutional limits of home inspections is so obvious that the City's failure to provide it evidences an intentional disregard for citizens' rights.

202.     The City's deliberate indifference is further demonstrated by its knowledge of a pattern of similar violations.

203.     In multiple instances, OSE and other City enforcement officers have conducted warrantless entries into private homes under the pretext of administrative inspections.  Despite lawsuits and complaints, the City has persisted in such conduct, showing that it has made a conscious choice to allow unconstitutional searches to continue.  *See Walker v. City of New York*, 974 F.2d 293, 297–99 (2d Cir. 1992) (failure to train may constitute municipal policy where policymakers knew or should have known of the need for training and made a conscious choice not to act).

204.     The City's failure to train and supervise OSE inspectors was the direct and proximate cause of the violation of Plaintiff's Fourth Amendment rights.

205.     OSE'S unconstitutional entry into Plaintiff's home was a foreseeable consequence of the City's deliberate indifference and failures to provide meaningful guidance on warrant requirements.  *See*, *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (municipal liability arises where failure to train is closely related to constitutional injury).

206.     The deliberate indifference and policy of OSE's warrantless enforcement practices have been repeatedly recognized in litigation and public reports, yet the City has refused to

modify its policies or ensure that OSE agents secure judicial warrants before entering private residences.

207.    As a direct and proximate result of the City's unconstitutional policies, customs, and deliberate indifference, Plaintiff suffered a violation of her rights under the Fourth and Fourteenth Amendments, invasion of privacy, emotional distress, and humiliation.

208.    Accordingly, Defendants City of New York and OSE are liable under 42 U.S.C. § 1983 for the deprivation of Plaintiff's constitutional rights caused by its policy, custom, or failure to train, supervise, and discipline its agents.

209.    In addition, to the actual violation of Plaintiff's constitutional right to be free of unreasonable searches of her private property, the provisions of Local Law 18, embody a municipal policy that invites violations that arise directly under the municipal policy.

210.    OSE and the City of New York are liable under Monell.

**NINTH CLAIM**
**Violation of the Due Process Clause – Substantive Due Process (U.S. Const. Amend. XIV)**

211.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

212.    Local Law 18 violates the Fourteenth Amendment's guarantee of substantive due process because it is arbitrary and lacks any rational relationship to a legitimate governmental purpose.

213.    Plaintiff has a legitimate property interest in the rental units in her building.

214.    The law's purported objectives, enhancing housing affordability, ensuring public safety, and preserving quality of life, are not advanced by the law's means.

215.    By prohibiting short-term rentals even in owner-occupied, small dwellings, Local Law18 deprives homeowners of fundamental property rights and economic liberty without due process. *See*, *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)

34

216.    OSE's discretionary review and denial of STR registrations is opaque and arbitrary

217.    The near-total suppression of MDL-permitted conduct shocks the conscience and lacks a rational governmental basis

218.    Accordingly, Local Law 18 is an arbitrary and irrational exercise of municipal authority in violation of the mandates set forth in applicable jurisprudence including *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985), and *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002).

**TENTH CLAIM**
**Equal Protection – Rational Basis "With Bite"**

219.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

220.    While economic legislation is reviewed deferentially, it must still bear a rational relationship to a legitimate objective. *See*, *FCC v. Beach Communications, Inc.,*.

221.    Courts invalidate laws where the means are irrational or motivated by animus. *See*, *City of Cleburne v. Cleburne Living Center*; and *Romer v. Evans*, .

222.    Local Law 18 purportedly aims to increase affordable housing supply.

223.    In practice, Local Law18 :

- It targets owner-occupied units not removed from long-term housing stock;
- It has produced no measurable increase in affordable housing;
- It functions as a de facto ban.

224.    The registration system of Local Law 18 lacks transparency, clear standards, or procedural safeguards.

225.    The City's failure to process, respond to, or fairly adjudicate applications renders the system illusory and denies applicants any meaningful opportunity to comply with the law. process).

35

226.    The City's de facto policy of ignoring or rejecting the overwhelming majority of applications demonstrates that Local Law 18 operates as a ban disguised as regulation, inconsistent with due process and basic administrative fairness. *See*, *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (arbitrary government action violates due process).Arbitrary or discriminatory administration violates equal protection. *See*, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 529 U.S. 572 (1977).

227.    The law lacks a rational connection between its asserted goal and its actual operation.

## ELEVENTH CLAIM
### Violation of Equal Protection Clause (U.S. Const. amend. XIV)

228.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

229.    Local Law 18 irrationally discriminates between classes of property owners without a legitimate basis.

230.    Owners of small buildings (two- to four-family homes) are treated identically to large corporate landlords and multi-unit property owners, despite material differences in their use of property and economic circumstances.

231.    The City Council's introduction of Bill 1107 in 2024, which seeks to exempt two-family dwellings, is evidence of legislative retreat and a tacit acknowledgment that such distinctions are arbitrary and unsupported.

232.    By treating materially different classes of property owners the same, Local Law 18 violates the Equal Protection Clause.

233.    Such disparate treatment violates the Equal Protection Clause.

**TWELTH CLAIM**
**Violation of the Contracts Clause (U.S. Const. art. I, § 10)**

234. Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

235. Plaintiff and many similarly situated owners entered into contracts, mortgages, leases, and service agreements based on lawful expectations of STR income.

236. Plaintiff entered binding contracts prior to enforcement of Local Law 18.

237. Local Law 18 substantially impaired those agreements.

238. Retroactive nullification of owner-present rental contracts was neither necessary nor narrowly tailored.

239. Local Law 18 substantially impairs those contractual obligations and expectations without reasonable justification or legitimate public purpose.

240. This substantial impairment violates the Contracts Clause. *See*, *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978).

**THIRTEENTH CLAIM**
**New York State Law Preemption**

241. Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

242. The MDL comprehensively regulates occupancy duration and classification for purposes of regulating short-term rentals.

243. Under *Albany Area Builders Assn. v. Town of Guilderland*, and *DJL Restaurant Corp. v. City of New York*,  local laws are preempted where they conflict with or intrude upon a comprehensive state regulatory scheme.

244. Local Law 18 impermissibly conditions MDL-permitted conduct on discretionary municipal approval by OSE.

245. The law is preempted under conflict, field, and obstacle preemption principles.

**FOURTEENTH CLAIM**
**Declaratory Relief – 28 U.S.C. §§ 2201–2202**

246.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

247.    An actual controversy exists between Plaintiff and Defendants regarding the constitutionality of Local Law 18.

248.    Plaintiff seeks a declaration that Local Law 18 violates the Fourteenth Amendment as arbitrary, irrational, lacking a rational basis, and preempted by New York State law.

249.    Consequently, Local Law 18 violates the Contracts Clause of the Constitution.

**FIFTEENTH CLAIM**
**Violation of the Excessive Fines Clause (U.S. Const. amend. VIII)**

250.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

251.    Local Law 18 requires hosts offering short-term rentals (less than 30 days) to register with OSE and prohibits renting an entire apartment unless the host is present.

252.    Failure to comply with the opaque registration requirement results in OSE imposing confiscatory fines in amounts from $1,000 for a first violation, up to $7,500 for third and subsequent violations.

253.    The excessive fines imposed under Local Law 18 are arbitrary and unconstitutional because they are inconsistent with the system of fines and penalties imposed for similar violations by individuals who are not short-term rental hosts.

254.    Such penalties are confiscatory in nature, intended not to remediate harm but to deter ordinary homeowners from exercising lawful property rights.

255.    The Eighth Amendment's prohibition against excessive fines applies to the states and municipalities through the Fourteenth Amendment. *See*, *Timbs v. Indiana*, 586 U.S. 319 (2019).

## SIXTEENTH CLAIM
### Federal Preemption:  Communications Decency Act

256.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

257.    Local Law 18 prohibits booking platforms from processing reservations for listings that lack a valid City registration number.

258.    Local Law 18 forces booking platforms to effectively serve as municipal enforcement agents by requiring that verify a host's OSE registration, determine whether a listing is lawful, block listing lacking registrations, and continuously monitor listing.

259.    Such compelled monitoring and editorial control is inconsistent with the protections and federal policy embodied in 47 U.S.C. §230.[4]

260.    As a direct and foreseeable consequence, online platforms refuse to display or process reservations for Plaintiff's listings unless Plaintiff complies with the challenged regulatory scheme.

261.    The resulting suppression of Plaintiffs' listings prevents Plaintiffs from advertising and renting her property through widely used online marketplaces, causing immediate indirect but predictable economic injury.[5]

## SEVENTEENTH CLAIM
### Ultra Vires Action / Lack Of City Council Authority

262.    Plaintiff re-alleges the contents of paragraphs 32-174 as if fully set forth herein.

263.    Under New York State Constitution, Article IX, and Municipal Home Rule Law § 10(1)(ii), local governments may legislate only in matters of purely local concern and not in areas preempted or occupied by the State.

---

[4] *Force v. Facebook*, 934 F.3d 53 (2d Cir. 2019); Barnes v. *Yahoo*, 570 F.3d 1096 (9th Cir. 2009).
[5] *Bennett v. Spear*, 520 U.S. 154 (1997); Dep't of Commerce v. New York, 588 U.S. 752 (2019).

39

264.    Regulation of housing and landlord–tenant relations is a matter of substantial state concern, and the State Legislature has enacted comprehensive laws occupying the field.

265.    The City Council's enactment of Local Law 18 exceeds the scope of its delegated powers, as no statute authorizes municipalities to regulate or prohibit short-term rentals or to impose registration requirements on the operation of private dwellings.

266.    Therefore, Local Law 18 is *ultra vires* and void.

## EIGHTEENTH CLAIM
### State Law Preemption

267.    Plaintiff repeats and re-alleges paragraphs 32-174 as if fully set forth herein.

268.    The State's housing statutes relative to the regulation of short-term rental in Class A units is codified the New York State Multiple Dwelling Law, leaving no room for inconsistent local regulation.

269.    Local Law 18 conflicts with and frustrates the purpose of these state laws by altering the use and occupancy rights of property owners and tenants, imposing penalties inconsistent with state policy, and usurping the DHCR's regulatory authority.

270.    Accordingly, Local Law 18 is expressly and impliedly preempted by state law and therefore unenforceable.

## IV.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)    Declare that OSE's actions at the OATH proceedings violated Plaintiff's due process rights under the Fourth and Fourteen Amendments;

(b)    Declare that Local Law 18 of 2022 is unconstitutional under the Fourteenth Amendment, and Due Process, Equal Protection; Contract, Supremacy and Excessive Fines Clauses of the Constitution;

(c)   Enjoin Defendants, their agents, and assigns from enforcing Local Law 18 against

Plaintiff and similarly situated property owners;

 (d)   Order OSE to process existing registration applications, including Plaintiff's, in a

timely and transparent manner;

(e)   Impose a judgment against the City of New York for compensatory damages in an

amount to be determined at trial, punitive damages to the extent permitted by law,

reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

(g)   Grant and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue so trialable.


Dated: New York, New York

March 17, 2026

## V. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Miouly E. Pongnon

*Mouly E. Pongnon*

By:   _____

Miouly E. Pongnon
2005 5TH Avenue,

41

Apt. 1
New York, NY 10035-1804
Tel:  (212) 722-8141
Mobile:  (347) 302-3399
E-mail:  MioulyPongnon@gmail.com
*Plaintiff Pro Se*

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically: X Yes ☐ No If you do consent

to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

42